**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WESTCOR LAND TITLE INSURANCE COMPANY, | Case No: 19-8474 (SDW) (LDW) |
| Plaintiff, | |
| v. | **OPINION** |
| ALEXANDER ALICEA and BRYNA I. MORALES-ALICEA, | December 10, 2019 |
| Defendants, | |
| v. | |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, REO EXPRESS, INC., U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES TRUST 2004-AC2, SEAN ARDES, ESQ., JOHN DOES 1-99, ABC CORPS 1-99, | |
| Third-Party Defendants. | |

**WIGENTON,** District Judge.

Before this Court is Third-Party Defendants First American Title Insurance Company ("FATIC") and Sean Ardes' ("Ardes") (collectively, "Third-Party Defendants") Motion to Dismiss Defendants Alexander Alicea ("Alicea") and Bryna I. Morales-Alicea's ("Morales-Alicea") (collectively, "Aliceas" or "Third-Party Plaintiffs") Third-Party Complaint ("TP

Complaint") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1] Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated below, Third-Party Defendants' motion is **GRANTED**.

I. BACKGROUND AND PROCEDURAL HISTORY

In 2004, non-party Asia Smith ("Smith") executed a mortgage on a property located on 804 South Fourteenth Street, Newark, New Jersey ("Property") with U.S. Bank. (TP Compl. ¶¶ 1, 7-9, ECF No. 10.)[2] This mortgage ("Smith Mortgage"), however, was improperly recorded. (*Id*. ¶¶ 8-9.) On October 8, 2009, Alexander Alicea purchased the Property from Smith and on February 12, 2010, obtained a title insurance policy for it ("Policy") through REO Express, Inc. ("REO"), an underwriter for FATIC. (*Id.* ¶¶ 1, 3, 6-7.)[3] The Policy insured title "against loss or damage" from, among other things, "[a]ny defect in or lien or encumbrance on the Title," ("Coverage Terms") and its coverage would continue "only so long as the Insured retains an interest in the Land," or "only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title" ("Continuation Terms"). (ECF No. 19-5 at 3, 8.)[4]

---

[1] U.S. Bank National Association was voluntarily dismissed as a third-party defendant from this matter on September 25, 2019. (ECF No. 26.) This Opinion will additionally refer to third-party defendant REO Express, Inc. and FATIC collectively as FATIC, as REO is an agent of FATIC. (TP Compl. ¶ 3; TP Def. Br. at 5, ECF No. 19-1.)
[2] The TP Complaint begins on page 8 of the Amended Answer, Affirmative Defenses, and Third-Party Complaint. (ECF No. 10.) Paragraph citations to the TP Complaint refer to the paragraphs beginning on page 8.
[3] The Aliceas use several different names for Third-Party Defendant FATIC, at times calling it First National Title Insurance Company, First National, First Fidelity, or First American. (*See* TP Compl. ¶¶ 3, 12-15, 18-21.) The Court will refer to this third-party defendant as FATIC.
[4] The Court may consider the Policy, which the Third-Party Defendants provide, as it is integral to Alicea's claims. (*See* TP Compl. ¶¶ 6, 24-25); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). This court will not consider new facts submitted by the parties that are not integral to or relied upon in the TP Complaint. (*See* ECF No. 20-1); *see also Sani-Pure Food Labs., LLC v. bioMerieux, Inc*., Civ. No. 13-6643, 2014 WL 6386803, at *3 (D.N.J. Nov. 13, 2014) (noting a plaintiff may not introduce a declaration "in an attempt to cure the alleged deficiencies in its complaint" (citing *Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988))).

Specifically excluded from coverage are "[d]efects, liens, encumbrances, adverse claims, or other matters . . . [(d)] created subsequent to Date of Policy" ("Exclusion 3(d)"). (*Id.* at 8.)

Because the Smith Mortgage was improperly recorded, REO did not find it in its title searches prior to issuing the Policy. (TP Compl. ¶ 10.) In 2014, the Aliceas learned of the Smith Mortgage, contacted FATIC, and were advised by Sean Ardes, an attorney working for FATIC, that "there was nothing to be concerned about [and] that they would handle [it]." (*Id.* ¶¶ 11-12, 39.) As a result, in part, "Defendants were under the impression that [FATIC] had handled the [Smith Mortgage]." (*Id.* ¶¶ 13-14.) However, the Smith Mortgage defaulted and around December 2015, U.S. Bank brought a foreclosure lawsuit against the Aliceas ("Foreclosure Lawsuit"). (*Id.* ¶¶ 4, 33; Compl. ¶¶ 13-14, ECF No. 1.)

On February 9, 2016, while the Foreclosure Lawsuit was pending, the Aliceas executed a deed ("Foreman Deed"), selling the Property ("Sale") to Temeka Foreman ("Foreman"). (Compl. ¶¶ 6-7.) The Foreman Deed gave no warranties, and contained only a "covenant as to grantor's acts," promising that the Aliceas have "done no act to encumber the Property." (ECF No. 1-2 at 5.) On the same day, the Aliceas signed an Affidavit of Title for Sale of Property ("Affidavit of Title") in which they affirmed that "to the best of [their] knowledge . . . [n]o other persons have legal rights in this property," and that "[t]here are no pending lawsuits or judgments against us or other legal obligations which may be enforced against the property." (*Id.* ¶¶ 10-11; ECF No. 1-3 at 2-3.) In connection with the Sale, Westcor Land Title Insurance Company ("Westcor") issued Foreman title insurance for the Property ("Westcor Policy"). (Compl. ¶ 12.)

On March 13, 2019, Westcor filed the Complaint in this matter, alleging that the Aliceas made fraudulent or negligent misrepresentations in the Affidavit of Title, specifically about the Foreclosure Lawsuit. (*See Id.* ¶ 15.) Westcor alleges that it relied on the Affidavit of Title when

3

issuing the Westcor Policy and, as a result, paid $234,700.00 to resolve the Foreclosure Lawsuit. (*Id.* ¶¶ 12, 19.) Westcor asserts that this loss was a "direct result of [the Aliceas] knowingly making false representations [in the Affidavit of Title] regarding encumbrances on the Property in order to effectuate the Sale." (*Id.* ¶ 20.)

The Aliceas filed the TP Complaint on May 29, 2019. (ECF No. 10.) The TP Complaint alleges five counts against the Third-Party Defendants: (I) negligence, (II) breach of contract, and (III) violation of the New Jersey Consumer Fraud Act ("CFA") as to FATIC; (IV) abuse of process as to US Bank; and (V) legal malpractice as to Ardes. (*Id.*) On August 2, 2019, Third-Party Defendants filed the instant Motion to Dismiss the TP Complaint. (ECF No. 19.) The Aliceas opposed on August 20, 2019, and the Third-Party Defendants replied on October 1, 2019. (ECF Nos. 20, 28.)

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

4

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

Initially, because the Aliceas admit their arguments as to Counts I (negligence) and III (violation of the CFA) are "with little merit," and acknowledge that Morales-Alicea "does not have a cause of action" under Count II (breach of contract), (Opp. Br. at 3, ECF No. 20), this Court dismisses Counts I and III in their entirety, and Count II as to Morales-Alicea. Because, the Aliceas previously voluntarily dismissed Count IV (abuse of process), (ECF No. 26.), the only remaining claims in the TP Complaint are: (1) Count II for breach of contract against FATIC; and (2) Count V for legal malpractice against Ardes.

  A. <u>Count II: Breach of Contract against FATIC</u>

A claim for breach of contract has four elements: (1) a valid contract; (2) plaintiff's performance under the contract; (3) defendant's non-performance under the contract; and (4) defendant's breach caused a loss to plaintiff. *See Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016). At issue in the instant matter is the third element—whether FATIC performed its obligations under the Policy. (*See* TP Compl. ¶ 24.)

"A title insurance policy is a contract that protects a landowner against loss caused by defective title to the land." *Shotmeyer v. N.J. Realty Title Ins. Co.*, 948 A.2d 600, 605 (N.J. 2008).

5

Courts liberally construe title insurance policies in favor of the insured, and when there is ambiguity, courts "should interpret the contract in accordance with the 'reasonable expectations' of the insured." *Id*. When there is no ambiguity, the policy "should be interpreted according to its plain, ordinary meaning," and courts "must guard against rewriting policies in favor of the insured under the guise of interpreting a contract's reasonable terms." *Id*.

Here, the Aliceas fail to state a claim for breach of contract for two reasons. First, the Policy terminated when the Aliceas sold the Property; and second, FATIC is not obligated under the Policy to indemnify claims based on the Aliceas' allegedly fraudulent or negligent misrepresentations in the Affidavit of Title.

### i. The Policy Terminated

The Policy's coverage terminated when the Aliceas sold the Property on February 9, 2016. (Compl. ¶ 6.) The Policy's Continuation Terms states that coverage continues "only so long as the insured retains an estate or interest in the Land . . . or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title." (ECF No. 19-5 at 8.); *see Shotmeyer*, 948 A.2d at 605 (citing 11 Couch on Insurance 3d, § 159:5 (1998)). The Aliceas no longer retain the Property. Therefore, for coverage to continue, the Aliceas must have liability *by reason of warranties* set out in the Foreman Deed. (*See id.*)

The Foreman Deed contains no such warranties. Rather, the deed contains a "covenant as to grantor's acts," which promises only that a grantor of a deed "has done no act to encumber" the deeded land. (ECF No. 1-2 at 5.); N.J. Stat. Ann. 46:4-6. This covenant is not a "warrant[y]" as contemplated by the Continuation Terms, and does not enable coverage to continue "by reason of warranties." *See Chicago Title Ins. Co. v. 100 Inv. Ltd. P'ship*, 355 F.3d 759, 763-65 (4th Cir. 2004) (finding, under Maryland law, substantively similar Continuation Terms did not extend

coverage when a property was conveyed with a "special warranty" which only warranted defects in title the grantor created); *see also Washington Temple Church of God in Christ, Inc. v. Glob. Properties & Assocs., Inc.*, 2012 WL 5187556, at *3, 6 (N.Y. Sup. Ct. Oct. 18, 2012) (finding, under New York law, substantively similar Continuation Terms did not extend coverage when a property was conveyed with a deed with only a "covenants against grantor's acts," because it contained no "warranty of title"); Joyce Palomar, 1 Title Ins. Law § 8:23 (2019 ed.) (noting that coverage under similar Continuation Terms required "conveying title with general title warranties"). Therefore, despite the Continuation Terms, the Policy terminated upon conveyance to Foreman.[5]

ii. The Policy Does Not Cover the Aliceas' Liability to Westcor

Even if the Policy did not terminate, it would not provide coverage to the Aliceas for their allegedly fraudulent or negligent misrepresentations. The Coverage Terms insures "[a]ny defect in or lien or encumbrance on the Title."[6] (*See* ECF No. 19-5 at 3); *see Shotmeyer*, 948 A.2d at 605 (defining title insurance similarly). As such, the Court must examine whether the Complaint against the Aliceas asserts claims covered by the Policy. *See Title Ins. Corp. of Penn. v. Wagner*, 431 A.2d 179, 180 (N.J. Ch. Div. 1981); *Szelc v. Stanger*, Civ. No. 08-4782, 2009 WL 4573425, at *3 n. 3 (D.N.J. Dec. 3, 2009).

Here, Westcor is suing the Aliceas for allegedly "knowingly making false representations regarding encumbrances on the Property [in the Affidavit of Title] in order to effectuate the Sale."

---

[5] Even if the covenant as to grantor's act could continue coverage, the Aliceas could not invoke it. This covenant "covers only the grantor's conduct" which encumbers the land. *Shotmeyer*, 948 A.2d at 609; N.J. Stat. Ann. 46:4-6. The Aliceas' conduct, for which they are potentially liable, did not encumber the land—Smith's conduct did. (TP Compl. ¶¶ 1, 8.) *Shotmeyer*, 948 A.2d at 609.
[6] The Policy also insures other risks causing defect to, or limiting the insured's use of the land, such as "[u]marketable title" and "taking by a governmental body," in some instances. (ECF No. 19-5 at 3.)

7

(Compl. ¶ 20; *see also id.* ¶¶ 50, 62.)[7] The Policy, however, contains no terms which could indemnify those fraudulent or negligent misrepresentations. (*See* ECF No. 19-5 at 3); *see Penacova Builders, Inc. v Ambrosio-Farias*, Civ. No. UNN-L-2163-12, 2013 WL 11521806, at *16 (N.J. Super. L. Aug. 28, 2013) (Trial Order) (noting that "monetary claims that do not result in defect, lien or encumbrance upon title are not covered events under title policies" (internal citations omitted)). Indeed, the Policy's Exclusion 3(d) specifically excludes from coverage "adverse claims, or other matters . . . created subsequent to the Date of Policy." (ECF No. 19-5 at 8.) The Policy became effective on February 12, 2010, but the Aliceas' alleged misrepresentations giving rise to their liability were made on February 9, 2016. *See Princeton S. Inv'rs, LLC v. First Am. Title Ins. Co.*, 97 A.3d 1190, 1199 (N.J. App. Div. 2014) (noting title insurance does not "insure against future events" (internal citations omitted)). Therefore, the Aliceas' claim for indemnification arose after the Date of Policy and is excluded under Exclusion 3(d).

The Policy does not indemnify the Aliceas for their alleged fraud or negligence here, and the Aliceas' claim for breach of contract, to the extent it is based on allegations that FATIC breached its obligation to indemnify defects in title, cannot stand.

B. <u>Count V: Legal Malpractice</u>

"[T]he legal-malpractice action provides a remedy for negligent professional performance." *McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J. 2001). "The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." *Id*.

---

[7] Specifically, Westcor claims that the Aliceas: (1) breached the Affidavit of Title by representing there were no pending lawsuits or judgments which may be enforced against the Property; (2) defrauded Westcor through these misrepresentations; (3) were unjustly enriched from these misrepresentations; and (4) negligently breached their duty of care under the Affidavit of Title. (Compl. ¶¶ 25-72.)

8

Here, the Aliceas have not alleged sufficient facts to show the first element, the existence of an attorney-client relationship between Alicea and Ardes.[8] Representation of a client is a consensual relationship "founded upon the lawyer affirmatively accepting a professional responsibility." *Matter of Palmieri*, 385 A.2d 856, 859 (N.J 1978). Such acceptance may be express or, "under certain circumstances, be inferred from the conduct of the parties." *Id*.

To this first element, the Aliceas only plead that Ardes "was the attorney assigned to represent Alicea in the foreclosure action," and that "Ardes assured Alicea that he was working with the foreclosing attorneys and that Alicea should not be concerned about a default and/or a default judgment." (TP Compl. ¶¶ 37, 39; *see also* Opp. Br. at 11.)

Based on the pleadings, there was no express attorney-client relationship between Alicea and Ardes. While Alicea pleads Ardes was "assigned to represent" him, this is alone insufficient, particularly given that he understood Ardes was an attorney working for FATIC.[9] Alicea fails to plead any other facts showing an explicit attorney-client relationship, such as the existence of a written attorney-client agreement; that Alicea had the power to hire or fire Ardes; or that Alicea received legal bills or made payments for Ardes' legal services. *See Speeney v. Rutgers*, 673 F. App'x 149, 153 (3d Cir. 2016). Thus, the Court looks to whether Alicea pleads an implied attorney-client relationship, which exists when: (1) a person manifests an intent to retain a lawyer's legal services to the lawyer; (2) that lawyer "fails to manifest lack of consent to" provide such services, and (3) the "lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services." *Id*. (citing *Dixon Ticonderoga Co.*, 248 F.3d at 169).

---

[8] For the same reasons the Aliceas have not alleged an attorney-client relationship between Ardes and Alicea, they have not alleged one between Ardes and Morales-Alicea.
[9] In fact, the TP Complaint appears to conflate Ardes and FATIC. (*See* TP Compl. ¶ 12 (alleging FATIC stated there was "nothing to be concerned about"); *id.* ¶ 39 (alleging Ardes stated that "Alicea should not be concerned[.]")

The Aliceas do not plead an implied attorney-client relationship, as they do not allege facts showing they manifested an intent to retain Ardes, such as allegations that Alicea solicited legal advice from Ardes or that they discussed the Foreclosure Lawsuit when Alicea sold the Property. *See Oestreicher v. Rutgers*, Civ. No. 02-959, 2015 WL 6460423, at *8 (D.N.J. Oct. 26, 2015), *aff'd sub nom. Speeney*, 673 F. App'x 149. The extent of the legal advice (if it may be construed as such) Ardes allegedly gave was that "Alicea should not be concerned about a default and/or a default judgment." (TP Compl. ¶ 39.) This does not show Alicea sought to make Ardes his attorney, or that Ardes accepted that responsibility. *See Hedenberg v. Ciardi*, Civ. No. A-3774-17T3, 2019 WL 6248016, at *6 (N.J. Super. Ct. App. Div. Nov. 22, 2019). The Aliceas' pleadings fail to state a claim for legal malpractice.

## IV. CONCLUSION

For the reasons set forth above, Third-Party Defendants' Motion to Dismiss is **GRANTED**. An appropriate Order follows.

s/ *Susan D. Wigenton*_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:    Clerk
cc:      Leda Dunn Wettre, U.S.M.J.
         Parties